## Case No. 5,667.

GRAHAM et al. v. The EXPORTER.

[21 Int. Rev. Rec. 110.]

District Court, S. D. Ohio. March, 1875.

WAGES OF SEAMEN—AGREEMENT IN WRITING.

The shipment of the libellants having been from a port in one state to a port in another than an adjoining state, and being without a contract or agreement in writing or in print, made and signed by them, such shipment was contrary to the acts of congress, and the seamen had a right to leave the service at any time, and recover for the time they actually served wages at the highest rate paid on the voyage or the price agreed upon.

[Cited in The Pacific. 23 Fed. 155.]

[In admiralty. This was a libel for seamen's wages brought by Henry Graham and others against the steamboat Exporter, her engines, etc.]

Richard Dyer, for libellants.
D. H. Humphrey, for respondents.

SWING, District Judge. The proof in this case shows that libellants were shipped at the port of New Orleans by the master of the steamboat Exporter, for a voyage ending at the port of Cincinnati, Ohio, and that they left the vessel at Cairo, Ill., before the ending of the voyage; and that before said voyage was proceeded upon no agreement in writing or in print was made by said master with said seamen. The seamen claim that they left the vessel by the consent of the master; this is denied by the respondents, and whilst there is a conflict in the evidence upon this point, the weight of the evidence indicates that they left the vessel without the consent of the master. There is also some question as to whether any detriment resulted to the vessel from their leaving, but in the view which I entertain of the case, this is not material. Upon these facts the libellants ask a decree for the wages due them up to the time they left the service of the boat, and the respondents deny the right to any compensation, because of their leaving the service of the boat before the completion of the voyage.

The determination of this question depends upon the construction of the statutes of 1790 and of 1840. By the first section of the act of 1790 (1 Stat. 131), it is provided that "every master of any ship or vessel of the burthen of fifty tons or upwards, bound from a port in one state to a port in any other than an adjoining state, shall, before he proceeds on such voyage, make an agreement in writing or in print with every seaman or mariner on board of such ship or vessel (except such as shall be apprentice or servant to himself or owners), declaring the voyage or voyages, term or terms of time for which such seaman or mariner shall be shipped. And if any master or commander of such ship or vessel shall carry out any seaman or mariner (except apprentices or servants as aforesaid), without such contract or agreement being first made and signed by the seamen and mariners, such master or commander shall pay to every such seaman or mariner the highest price or wages which shall have been given at the port or place where such seaman or mariner shall have been shipped for a similar voyage, within three months next before the time of such shipping, provided such seaman or mariner shall perform such voyage; or if not, then for such time as he shall continue to do duty on such ship or vessel; and shall more-

-over forfeit twenty dollars for every such seaman or mariner—one-half to the use of the person prosecuting for the same and the other half to the use of the United States, and such seaman or mariner not having signed such contract shall not be bound by the regulations nor subject to the forfeitures and penalties contained in this act." The 10th section of the act of 1840 (5 Stat. 394) provides that "all shipments of seamen, made contrary to the provisions of this and other acts of congress, shall be void; and any seamen so shipped may leave the service at any time, and demand the highest rate of wages paid to any seaman shipped for the voyage, or the sum agreed to be given him at his shipment." Construing these statutes together, there would seem to be no doubt but that the seamen in this case having been shipped without the signing of the written or printed agreement provided for by the statute, had the right to leave the ship and recover for the time of their service the highest rate of wages paid any seamen on the voyage or the sum agreed upon. But it is claimed that these seamen being unarticled were not within the provisions of the statute, but that their rights must be determined by the general maritime law, and by it desertion forfeited the accrued wages, or at least having made a contract for a certain voyage no recovery could be had unless the contract had been fulfilled by the completion of the voyage.

Several authorities have been brought to the attention of the court upon this point. The case of Jameson v. The Regulus [Case No. 7,198]; the case of The Rovena [Id. 12,-090]; the case of The Crusader [Id. 3,456]; and that of Cloutman v. Tunnison [Id. 2,-907], would seem to sustain the doctrine contended for. But it must be borne in mind that each one of these cases was before the passage of the act of 1840. They were under the act of 1790, which contained no provision making void the shipments of seamen without the agreement in writing or print, and authorizing the seamen to leave the service and permitting them to recover. We have however been referred to cases which have been decided since the passage of the act of 1840, which it is contended sustains the same doctrine. In the case of Gifford v. Kolloch [Id. 5,409], and that of Coffin v. Shaw [Id. 2,952], it appears that the seamen were regularly shipped by their fathers, and in one case at least the agreement was signed also by the son. In the case of The Philadelphia [Id. 11,084], the question is not made as to whether the agreement was in accordance with the terms of the statute; but it is very evident that it must have been so, for the whole decision proceeds upon the idea of a statutory forfeiture, and there could have been no such thing without a compliance with its terms by the master of the vessel. In the case of The Hudson [Id. 6,831], it does not appear wheth-

er the shipment was for any particular voyage nor whether it was from a port in one state to a port in a state not adjoining. It only appears that it was for general employment upon a vessel which may have been engaged in trade upon waters within the boundaries of a single state or adjoining state; and so with the case of Coffin v. Jenkins [Id. 2,948], the facts of which do not bring the case within the present case, and cannot therefore be relied upon as establishing the doctrine contended for. On the other hand, the right of a seaman to leave the ship or vessel, when no agreement in writing or in print has been made and signed, is clearly recognized by Justice Curtis in Snow v. Wope [Id. 13,149]; in Page v. Sheffield [Id. 10,667]; by Judge Ware in The Ianthe [Id. 6,992]; and by Judge Miller in The Fremont [Id. 2,746]. The shipment of these seamen having been from a port in one state to a port in another than an adjoining state, and being without a contract or agreement in writing or in print, made and signed by the seamen, such shipment was contrary to the acts of congress, and the seamen had a right to leave the service at any time, and recover for the time they actually served wages at the highest rate paid on the voyage or the price agreed upon.